## A11A0854. DURRAH v. STATE FARM FIRE AND CASUALTY COMPANY et al.

(717 SE2d 554)

SMITH, Presiding Judge.

In this uninsured motorist ("UM") case, Yolanda Durrah appeals from the trial court's order dismissing her renewal action against Carmen Hernandez and State Farm Fire and Casualty Company. For the reasons set forth below, we affirm.

"We review the trial court's ruling on a motion to dismiss under the de novo standard of review." (Citation and punctuation omitted.) *Sadi Holdings v. Lib Properties*, 293 Ga. App. 23 (666 SE2d 446) (2008). The record shows that following a car accident on May 11, 2006, Durrah timely filed a suit for personal injuries against Hernandez and State Farm, her UM carrier. Durrah personally served State Farm and served Hernandez by publication because she could not locate Hernandez.

Durrah later voluntarily dismissed her complaint without prejudice and then refiled it against Hernandez and State Farm within six months, but after the expiration of the statute of limitation. She

personally served State Farm with her renewal action, but did not serve Hernandez with it in any manner. According to the trial court's order,[1] both Hernandez and State Farm moved to dismiss Durrah's renewal action. The court granted Hernandez's motion to dismiss based upon Durrah's failure to serve Hernandez personally in the original action. Based upon its dismissal of Hernandez, the trial court concluded that Durrah could not meet her obligation to obtain a judgment against Hernandez as a condition precedent to her right to recover against her UM carrier and dismissed Durrah's renewal action against State Farm.

1. Durrah contends the trial court erred by dismissing her renewal action against State Farm because she served Hernandez by publication for purposes of obtaining a nominal judgment against her in the first action. We disagree.

The trial court properly dismissed the case against State Farm based upon the rule that when an uninsured motorist is dismissed based upon a lack of personal service before a plaintiff obtains a nominal judgment against the UM carrier, the case against the UM carrier must be dismissed as well. See *Cohen v. Allstate Ins. Co.*, 277 Ga. App. 437, 441 (2) (626 SE2d 628) (2006). In this case, the trial court dismissed Hernandez from the renewal action based upon a lack of personal service in the original action before the expiration of the statute of limitation. See *Costello v. Bothers*, 278 Ga. App. 750, 752 (2) (629 SE2d 599) (2006); *Hawkins v. Wilbanks*, 248 Ga. App. 264, 265 (546 SE2d 33) (2001).

The court then properly dismissed the renewal action against State Farm because no judgment could be obtained against the uninsured motorist. See *Brown v. State Farm &c. Ins. Co.*, 242 Ga. App. 313, 314-315 (2) (529 SE2d 439) (2000); *State Farm &c. Ins. Co. v. Noble*, 208 Ga. App. 518, 519-520 (430 SE2d 804) (1993); *Walker v. Ga. Farm &c. Ins. Co.*, 207 Ga. App. 874, 876 (2) (429 SE2d 289) (1993).

> The renewal statute applies only to actions that are valid prior to dismissal. . . . While service by publication may be used pursuant to OCGA § 33-7-11 for purposes of complying with the condition precedent for pursuing one's uninsured motorist insurance carrier, it is insufficient to confer personal jurisdiction.

(Citations, punctuation and footnote omitted.) *Costello*, supra, 278 Ga. App. at 752 (2). The lack of personal service of the uninsured

---

[1] We do not have the entire record before us because the parties submitted a joint stipulation of facts in their record appendix in lieu of the record below.

motorist in the original action renders it void, and it therefore cannot be renewed. Id. Stated differently, a plaintiff's failure to obtain a nominal judgment against an uninsured motorist served by publication *before* voluntarily dismissing will be fatal to any attempted renewal after the expiration of the statute of limitation. As that is the case here, we affirm the trial court's dismissal of Durrah's renewal action against State Farm.

2. Durrah contends in the alternative that the General Assembly eliminated the condition precedent of a judgment in a 2006 amendment to the UM statute, OCGA § 33-7-11. According to Durrah, the judicially-created requirement for a judgment against the uninsured motorist stemmed from the following italicized language in former OCGA § 33-7-11 (a) (1):

> No automobile liability policy . . . shall be issued . . . in this state . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums which said insured shall be *legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.*

(Emphasis supplied.)

The 2006 amendment substituted "for bodily injury, loss of consortium or death of an insured" for "all sums which said insured shall be legally entitled to recover as" in subparagraph (a) (1). Based on the deletion of the words "legally entitled to recover" from the UM statute, Durrah asserts that the General Assembly intended to abolish the requirement that a judgment be obtained against the uninsured motorist as a condition precedent to recovery from a UM carrier. Again, we disagree.

As recognized in Justice Carley's special concurrence in *Dees v. Logan*, 282 Ga. 815 (653 SE2d 735) (2007), "the 2006 enactment is clearly the General Assembly's response to *Gordon v. Atlanta Cas. Co.*, 279 Ga. 148, 149 (611 SE2d 24) (2005)." Id. at 820. In *Gordon*, the Georgia Supreme Court held that former OCGA § 33-7-11 (a) (1) required an insurer to pay damages for the death of a person who was not covered under the policy, reasoning:

> The language of the [former] statute is plain and it is not illogical. It clearly states that the insurer is to pay "*all* sums which (the) insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." [Cit.] All means all, every single one. Since the insured in this case is entitled to recover damages for the death of his son against the owner or driver of the unin-

sured vehicle, he is entitled to recover those damages against his insurer.

279 Ga. at 149. The preamble to the 2006 amendment supports Justice Carley's conclusion in *Dees*, supra, because it describes that one of its purposes was "[t]o amend . . . so as to change certain provisions relating to damages recoverable by an insured under uninsured motorist coverage." Ga. L. 2006, p. 815. We therefore decline to interpret the General Assembly's 2006 amendment, aimed at obviating the 2005 *Gordon* holding, as intended to also eviscerate the requirement for a judgment against the uninsured motorist that was established decades earlier. See *State Farm &c. Ins. Co. v. Girtman*, 113 Ga. App. 54, 55-58 (147 SE2d 364) (1966).[2]

Moreover, the "legally entitled to recover" language in former OCGA § 33-7-11 (a) was not the only statutory language used to support the conclusion that a judgment against the uninsured motorist is a condition precedent to recovery against a UM carrier. The conclusion in *Girtman* was

> further strengthened by the provisions of the Act which grant to the insurance company the right to be subrogated to the rights of its insured against such uninsured motorist after it has paid a claim arising under this law. If the contention of the appellee that the legal liability of the uninsured motorist to her could be adjudicated in this action should be upheld, then the long-standing principles respecting the conclusiveness of judgments, that is, that judgments shall be conclusive and binding only as between the parties and their privies, would have to be violated, or else the right granted to the insurance company by the law, to be subrogated to the claim of its insured against such uninsured motorist, would be rendered ineffectual since the insurance company would be subjected to the risk of having to relitigate the issue of the uninsured's liability before the same or a different tribunal under different circumstances

---

[2] In *Girtman*, we held that no suit could be brought against a UM carrier before a judgment had been obtained from the uninsured motorist. 113 Ga. App. at 58. In *Moss v. Cincinnati Ins. Co.*, 154 Ga. App. 165 (268 SE2d 676) (1980), we noted that a 1967 amendment to the statute allowed for a simultaneous suit for coverage against a UM carrier with a tort suit against the uninsured motorist if the UM carrier elected to defend in its own name after being served with the tort suit. Id. at 168-169. Our opinion in *Moss* did not, however, eliminate the requirement for a judgment against the uninsured motorist as a condition precedent to coverage under the policy. See *Boles v. Hamrick*, 194 Ga. App. 595, 596-597 (391 SE2d 418) (1990); *United States Fidelity & Guaranty Co. v. Lockhart*, 124 Ga. App. 810, 811 (1) (186 SE2d 362) (1971), affirmed, *United States Fidelity & Guaranty Co. v. Lockhart*, 229 Ga. 292 (191 SE2d 59) (1972).

with the attendant risk of a different conclusion as to the liability of the uninsured motorist being reached. We will not attribute to the legislature an intent to reach such an illogical or unjust result.

*Girtman*, supra, 113 Ga. App. at 57-58.

Finally, we must construe statutes "to square with common sense and sound reasoning. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citation omitted.) *Five Star Steel Contractors v. Colonial Credit Union*, 208 Ga. App. 694, 696 (431 SE2d 712) (1993). Because the construction advanced by Durrah would lead to such an absurd consequence, we decline to adopt it.

*Judgment affirmed. Mikell and Dillard, JJ., concur.*

DECIDED OCTOBER 14, 2011.

*Thomas G. Tidwell*, for appellant.
*Cowsert & Avery, Michael S. Broun II*, for appellee.